UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EARTHLINK, INC.                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       ) CASE NO. 1 03 CV 2559 JOF
                                         )
ANDY POPE; SCOTT MASLOWE;                )
FRED LUSKY; NETBENDERS, LLC;             )
ISN, LLC; and JOHN DOES 17-50            )
(THE "ALABAMA SPAMMERS");                )
                                         )
        Defendants.                      )

## SECOND AMENDED VERIFIED COMPLAINT FOR INJUNCTION AND DAMAGES

Plaintiff EarthLink, Inc. ("EarthLink" or "Plaintiff")
files this Second Amended Verified Complaint For Injunction And
Damages against the above-identified defendants (referred to
hereinafter as "Defendants," which term shall refer individually
and collectively to each and every defendant identified in the
style of this case as if said defendant's name appeared in lieu
of the term "Defendants").  EarthLink shows that Defendants'
wrongful acts, individually and in combination, have caused and
continue to cause substantial and irreparable harm to EarthLink.

## THE PARTIES

### *The Defendants*

1.

Defendant Andy Pope ("Pope") resides in Medina, Tennessee.[1] Pope was previously served with process and has already appeared herein.

2.

Defendant Fred Lusky ("Lusky") resides in West Bloomfield, Michigan.  Lusky was previously served with process and has already appeared herein.

3.

Defendant Scott Maslowe ("Maslowe") resides in Sylvan Lake, Michigan.  Maslowe was previously served with process and has already appeared herein.

4.

Defendant Netbenders, LLC ("Netbenders") is a Michigan limited liability company with a registered office at 23800 West Ten Mile Road, Suite 200, Southfield, MI 48034.  Netbenders was previously served with process and has already appeared herein.

5.

Defendants Pope, Lusky, and Maslowe are each the owners, directors, and/or officers of Netbenders, and personally directed Netbenders' operations and conduct.

---

[1] All individual defendants' residence addresses are omitted pursuant to Standing Order 04-02.

6.

Defendant ISN, LLC ("ISN") is a Michigan limited liability company with a registered office at 23800 West Ten Mile Road, Suite 200, Southfield, MI 48034. ISN was previously served with process and has already appeared herein.

7.

Defendants Pope, Lusky, and Maslowe are each the owners, directors, and/or officers of ISN, and personally directed ISN's operations and conduct.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### *The Internet Generally*

8.

The acts complained of herein were committed by Defendants through use of the Internet. Often called the "Information Superhighway," the Internet is a complex communications network that links private and public computer networks, systems, and individuals. It consists of computers and computer databases connected primarily through telephone lines, fiber optic cables, and other high-speed dedicated lines.

9.

Most components, however, are proprietary and are owned and/or administered by "Internet Service Providers" ("ISPs"). ISPs own computers and other devices that enable their customers to obtain various services including Internet access and the

3

ability to communicate with other Internet users via electronic mail ("e-mail"). In many ways, the Internet resembles our highway transportation system. The phone lines are similar to highways over which goods are transferred from one location to another.

10.

There are several categories of Internet accounts, including DSL (which uses a dedicated phone line for an "always on" connection) and cable accounts (which use the same coaxial cable on which cable TV is delivered for an "always on" connection). The original and most popular type of Internet account is, however, the "dial up" account, which uses a non-dedicated analog telephone line (<u>i.e.</u>, a "regular" telephone line) and a "modem" (a computer/telephone line interface) to connect the user's computer to the Internet.

11.

<u>The computers and equipment that comprise an ISP's network are the proprietary property of the ISP</u>. EarthLink limits access to its proprietary Internet network and e-mail system to EarthLink Members[2] only. Without a valid EarthLink username and password, a person is unable to "log-on" and connect to EarthLink's network to send mail, check his account, surf the

---

[2] EarthLink refers to its subscribers as "Members."

Internet, etc.  The use restrictions imposed by most ISPs, as well as by State and federal law, impose restraints on the manner in which those systems may be used.  Among the types of prohibited conduct is the sending of unsolicited commercial e-mails.  The EarthLink Acceptable Use Policy ("AUP"), which governs the use of the EarthLink addresses and equipment, likewise prohibits such activities.

### *EarthLink's E-mail System*

12.

Among the Internet-related services offered by EarthLink is e-mail service, by which EarthLink's members are allowed to compose, send, and retrieve e-mail messages.  EarthLink members may send and receive e-mails to and from other EarthLink members, as well as any other Internet users.  EarthLink's costs of doing business are borne in part by membership fees and service fees paid by its members.  EarthLink carries on the dedication to customer service and satisfaction of its predecessor companies, including EarthLink Network, Inc. and MindSpring Enterprises, Inc., who merged in February 2000 to form EarthLink.

13.

EarthLink has invested substantial sums of money in developing and marketing its Internet-related and e-mail-related

services.  EarthLink's e-mail system is operated through dedicated computers known as "servers" which store and route e-mail messages for EarthLink members.  The system was created and is maintained solely for the benefit of EarthLink's members, who must agree to specific terms of use prior to activation of their accounts.  These terms include, and have at all relevant times included, strict prohibitions against use of the EarthLink system or name in relation to spamming or spoofing, as well as the use of false or fraudulent information in relation to account activation.

14.

Each EarthLink member is given a unique EarthLink address so that he or she can send and receive e-mail via personal computer.  Each member's address consists of a unique name selected by the member plus the EarthLink domain designation. For example, user John Doe III might choose "johndoeIII@earthlink.net" as his e-mail address.  Some EarthLink users have e-mail addresses that end in other domains (such as "mindspring.com").  These are carry-overs from mergers (e.g., the EarthLink/Mindspring merger) and from other companies/domains acquired by EarthLink.  EarthLink's mail servers have a finite capacity designated to accommodate the demands imposed by EarthLink's members.

15.

EarthLink's computer system is not designed to accommodate, and is vulnerable to disruption by, indiscriminate mass mailings, as described below, from irresponsible and criminal parties like the Defendants.

### *Dial-Up Accounts*

16.

A dial-up user typically connects to the EarthLink network (and, through it, to the Internet) by the following process:

(a)

He initially signs up (usually on a monthly-fee basis) with EarthLink either over the telephone or by filling out an application for a new account on an EarthLink web page. As a part of the sign-up process, he chooses a user name and password that will allow him to gain Internet access through the EarthLink network. He is also presented with EarthLink's Internet Service Agreement ("ISA") and AUP, which define the limits of his permissible use of the EarthLink system. The new user must expressly agree to the terms of the ISA and AUP to complete the sign-up process. All EarthLink Members agree to the ISA, the acceptance of which is a mandatory step in the EarthLink sign-up process. In short, unless the ISA is expressly accepted, a person cannot become an EarthLink Member

and accordingly cannot enjoy the use of an EarthLink account. At all times during the sign-up process, the ISA is available online in its entirety for review. The Member's affirmative assent to the ISA is, in fact, a mandatory part of this process – a potential Member could complete the sign-up, process only by clicking an "I Accept [the ISA]" link (for Internet sign-ups) or verbally agreeing to the ISA (for phone sign-ups). Thus, from EarthLink's point-of-view, a request-to-connect (i.e., a log-on) involving that username and password necessarily originated from a bona fide Member who had indeed agreed to the ISA.

(b)

The user obtains the necessary computer hardware (including the modem, if not already a part of his system) and software to allow a successful connection.

(c)

Using the phone line connected to his modem/computer, the user dials the access number of an EarthLink Point-of-Presence ("POP"), which is typically either a local number for that user or a toll-free number (i.e., 1-800 or 1-888). A POP is typically composed of various pieces of EarthLink's computer hardware, including:

* routers (which ensure that the user's information or message is forwarded to the correct "next stop" on its journey from user to intended end-destination);

* call aggregators (which insure that the incoming and outgoing calls from the various users attempting to connect and/or already connected at any given time are handled correctly); and

* servers (computers on which information resides and from which the user's "client" computer can retrieve information).

(d)

When a user dials into an EarthLink POP, he must provide his unique EarthLink user name (e.g., johndoe@earthlink.net) and password in order to access the EarthLink network. The POP verifies this user information with EarthLink's central account database through RADIUS[3] and creates a record of that user's access to the system, which will include the date, time, telephone number dialed from (if the POP has Caller ID or Automatic Number Identification ("ANI")), and other session details. If RADIUS authenticates the EarthLink member via his

---

[3] Remote Authentication Dial-In User System

user name and password, he is allowed access to the EarthLink network and the Internet.

<div align="center">(e)</div>

After connecting to the ISP's primary computer network to verify the caller's user name and password, the POP grants the connection request and assigns the computer a "dynamic IP address" (a unique numerical address that identifies the computer) that remains valid until the user "logs off" (<u>i.e.</u>, instructs his computer to disconnect the call).

<div align="center">(f)</div>

When the user finishes his Internet session, he "logs off" (hangs up) by instructing his computer to disconnect the call.

<div align="center">***Spamming & Spoofing***</div>

<div align="center">17.</div>

The sending of unsolicited commercial e-mail ("spam") through the computer network of an ISP that prohibits such e-mail, whether by a customer of the ISP or by a third-party Internet user, is illegal. Courts have ruled <u>without exception</u> that spam is actionable under theories ranging from the Computer Fraud and Abuse Act to common law trespass. Since an ISP has the absolute right to bar spam and those who send it from the ISP's network, many spammers turn to fraud, forgery, and identity theft to obtain the e-mail accounts used to carry out

their illegal e-mail campaigns.  These spammers seek to eliminate the "paper trail" that would otherwise lead back to them and to acquire Internet resources they could not otherwise obtain as "known spammers."  Spammers often work together, together exploiting spam-related resources.

18.

Spam is the equivalent of a COD package that the recipient is forced to accept, or a series of collect calls that the recipient has no way to decline and that ties up and adversely affects the performance of the recipient's phone system.  Spam impairs the efficiency of the Internet as a whole and of the Internet-related and proprietary services offered by the victim ISPs.  It is prohibited because it constitutes a trespass, conversion, and invasion of privacy; because it jeopardizes the performance and viability of the ISP's computer system; because the victim users and ISPs must pay for resources used to deliver the e-mails; and because the advertised products and services are often fraudulent and/or illegal.  Further, this junk mail illegally causes the user-recipients to incur additional expenses of time, money, and computer resources in relation to the storage, review, and inevitable deletion of the unwanted spam.

19.

Finally, and perhaps most importantly, this junk e-mail severely and irreparably damages the business reputation of innocent individuals or companies who are often falsely identified or implicated by the spammer as having had some role in the origination or transmission of the offending e-mail. Such misidentification is pejoratively known as "spoofing" and represents actionable conduct as to any ISP, e-mail service, or other entity wrongfully and falsely identified as having been associated with the e-mail. This fraudulent and deceitful misidentification of the source of a message may be accomplished, among other means, by:

* manipulating the message header to alter the identification of the sender's true name and domain (i.e., manually forging the originating address);

* referencing a particular person or entity in the text of the message; and/or

* routing the e-mail or message through the innocent ISP's system and otherwise converting that ISP's finite computer resources to create a trail that falsely indicates that the ISP was voluntarily involved in the sending and/or transport of the spam.

The depth and degree of the universal hatred of unsolicited commercial e-mail by Internet users is amazing. Indeed, the primary portion of a victimized party's damages arises from the incredible and inevitable backlash of complaints and anger by the e-mail recipients against the innocent entity(s) wrongfully believed by the recipients to have sent or helped send the e-mail. With the sending of each illegal e-mail, the innocent party's reputation is damaged, and money and manpower are wasted as the party attempts to respond to the complaints and to identify the true spammer/spoofer. Further, the "spoofing" complained of herein is harmful and illegal because it represents the wrongful use of the innocent company's name and marks.

### _Defendants' Wrongful Acts - Generally_

21.

Defendants are criminals. They have engaged in illegal acts, including credit card theft, account theft, the receipt and use of stolen credit card numbers and computer accounts, fraud, spamming, and spoofing. Specifically, Defendants have engaged in unsolicited commercial e-mail campaigns in relation to which they have: (a) converted and trespassed upon EarthLink's Georgia computer equipment for their own purposes;

(b) stolen and resold Internet-related services from EarthLink
or knowingly received services stolen by someone else; (c)
stolen passwords and credit-card numbers from innocent third-
parties (or knowingly received the same); (d) infringed upon the
intellectual property of EarthLink; (e) damaged EarthLink's
business reputation; and/or (f) otherwise committed the wrongful
acts described below.  Each Defendant has at all times been
aware of the illegality of and harm caused by his spamming and
spoofing schemes.  The specific illegal acts of the defendants
are described in detail below.

### The "Alabama Spammer" Spam Ring

22.

The extended group of individuals and business entities
responsible for the flood of illegal spam e-mail described below
(including, but not limited to, every Defendant named in this
Complaint) formed the "ring" or "gang" of spammers identified by
EarthLink as the "Alabama Spammers."

23.

At the "core" of the Alabama Spammers, and directly
responsible for the technical operations, including sending of
the illegal e-mails, are the "Netbenders Defendants" – Andy
Pope, Fred Lusky, Scott Maslowe, Netbenders, LLC, and ISN, LLC.
The Netbenders Defendants sent illegal e-mails both for

14

themselves and for the other co-conspirators of the Alabama
Spammers spam ring.

<div align="center">24.</div>

Other members (the "Financing Members") knowingly financed
the Alabama Spammers enterprise by paying the Netbenders
Defendants to send illegal spam e-mails advertising the
Financing Members' goods, services, and web sites.

<div align="center">***The Netbenders Defendants' Spam Network***</div>

<div align="center">25.</div>

Pope, Maslowe, and Lusky were the masterminds of the
Alabama Spammers' sophisticated criminal spam-for-hire
enterprise described above.  Acting individually and through
their closely-held companies (Netbenders and ISN), these three
devised the underlying scheme of identify theft and computer
theft, acquired the necessary hardware and software, and, using
false names and stolen identities, "contracted" with EarthLink
to obtain (i.e., steal) scores of dial-up accounts used to send
billions of illegal e-mails to EarthLink Members and other
Internet users.

<div align="center">26.</div>

The enterprise planned and carried out by the Netbenders
Defendants, by its very design:

* targeted Georgia-based EarthLink;

* involved their fraudulent procurement and use of at
  least one hundred EarthLink accounts;

* involved their intentional trespass upon and misuse of
  EarthLink's Georgia computer system; and

* involved the intentional mislabeling of e-mail sent via
  the resources of an Internet Service Provider ("ISP")
  other than EarthLink as "EarthLink e-mail."

### 27.

From October 2002 through at least May 2003, these Internet
criminals used fictitious and stolen names and social security
numbers and fraudulently-obtained credit/debit cards to
"purchase" at least one hundred EarthLink accounts, which were
then used in violation of State and federal law to send illegal
spam e-mails.  Specifically, the Netbenders Defendants used a
form of credit card known as a "gift card," which looks and
functions much like a secured credit card or bank debit card.
The Netbenders Defendants favored MasterCard gift/debit cards,
purchased in CVS and RiteAid drug stores, for this illegal
registration of EarthLink accounts.  The Netbenders Defendants
initially registered the cards with the issuing banks by using
fictitious names and social security numbers.  Later, when the

issuing banks tightened security surrounding registration of the cards, the Netbenders Defendants began using the actual names, addresses, and social security numbers of unwitting third parties to register the cards (i.e., they incorporated identity theft into their menu of illegal activities).

28.

During their illegal eight-month campaign (which was still running at full tilt until at least May, 2003), the Netbenders Defendants fraudulently "purchased" more than one hundred Internet dial-up accounts from EarthLink using fraudulent personal information and credit cards registered in those persons' names. In each instance, the Netbenders Defendants also used a bogus or stolen name (i.e., they either made up a name or used the name of a person to whom they registered the MasterCard gift card). A listing of the scores of EarthLink accounts known to have been fraudulently obtained by the Netbenders Defendants was attached to previous filings by EarthLink and is hereby incorporated by reference. As described above, each of these accounts was then used illegally to send Alabama Spammer spam to Internet users, including EarthLink Members.

29.

In order to set up (i.e., steal) each of the accounts used by the Alabama Spammers enterprise, the Netbenders Defendants necessarily either: (a) contacted EarthLink's Georgia offices via telephone, or (b) accessed the Georgia computer systems used by EarthLink for online account creation.

30.

The Netbenders Defendants used each newly-obtained account to send spam to EarthLink and other ISPs until EarthLink learned of the illegal use and deactivated the account. As one account was terminated, the Netbenders Defendants would immediately begin using the next account.

31.

The equipment used by the Netbenders Defendants consisted of approximately 70 mail servers, each capable of sending approximately 800,000 e-mail messages per day, for a total output of 56 million e-mail messages per day.

32.

The Netbenders Defendants accessed EarthLink's Georgia network using collocated computer equipment and subleased telephone lines (their "Spam Network") at WWISP, a Birmingham, Alabama ISP. The Spam Network was configured so that the Netbenders Defendants could access it and direct a spam attack from any Internet-connected computer.

33.

Each spam session began with a dial-up connection from a
Spam Network telephone line that necessarily involved access to
and that was authenticated by EarthLink's Georgia computer
network.

34.

Some of the spam sent by the Netbenders Defendants was
necessarily sent _directly through_ EarthLink's Georgia e-mail
servers.

35.

In addition to allowing a larger volume of spam to be sent
via the high-speed connection as opposed to the slower dial-up
connection, this forgery aspect of the Alabama Spammers
enterprise: (1) allowed the true location and identity of the
Spam Network to go undetected (_i.e._, the e-mails appeared by
their forged headers to have originated solely from an EarthLink
account); and (2) ensured that EarthLink would receive the
majority (if not all) of the complaints from disgruntled spam
recipients misled by the forged EarthLink IP address.

36.

This system necessarily generated significant and
continuous Internet traffic into, out of, and through
EarthLink's Georgia computer systems which processed both the
electronic connection requests and confirmations required for

each e-mail message sent. Had the offending messages contained true or accurate header information, the actual originating IP addresses (_i.e._, those addresses assigned to the Netbenders Defendants' WWISP high-speed connection) would have been quickly identified as sources of spam and would likely have been blocked by numerous ISPs (including EarthLink). Instead, because the headers falsely identified the messages as originating from IP addresses assigned to EarthLink, most ISPs would not consider blocking the addresses as it would significantly impair their own users' ability to send and receive e-mail to EarthLink subscribers.

37.

The Netbenders Defendants also utilized some of the fraudulently-obtained accounts as "monitor" accounts to insure that EarthLink or other ISPs were not intercepting or blocking their messages from reaching their destinations.

38.

Moreover, the Netbenders Defendants often temporarily hosted an advertised web site at the dynamic (temporary) Internet Protocol ("IP") address assigned by EarthLink to the Spam Network computer that had placed that particular dial-up call.

39.

Another damaging consequence of the Netbenders Defendants'
spoofing scheme was that any undeliverable or rejected spam e-
mails that was sent from a stolen EarthLink account or included
headers that identified an EarthLink IP address as the point of
origin would be returned to EarthLink's own mail servers (i.e.,
it would "bounce-back" to EarthLink).

40.

The average life span for fraudulently-obtained accounts,
as measured from the first use of the account for spam-related
purposes until EarthLink's identification and termination of the
account, was approximately 2.5 days.  This number reflects a
conservative estimate of the average length of time that it took
for Internet users to receive the e-mails and complain to
EarthLink, for EarthLink to investigate the complaint, account
history, and offending e-mails, and for EarthLink to complete
the account termination process.

41.

The Spam Network was configured to allow the simultaneous
use of a single EarthLink account on up to 70 Spam Network
computers, each of which could send up to 800,000 spam e-mails
per day via the "forged header" scheme described above.  Because
a typical Alabama Spammer account remained active for 2.5 days,

each account could be used to send a total of approximately 140 million spam e-mails.

<center>42.</center>

According to Alabama Spammer gang member Erb Avore, the Netbenders Defendants sent more than eight billion e-mails via their misuse of the EarthLink network and/or name.

### *EarthLink's Investigation Into The Alabama Spammers Spam Ring*

<center>43.</center>

On or around September 30, 2002, EarthLink became aware of a significant amount of spam originating from one or more spammers in or around Birmingham, Alabama. EarthLink analyzed the offending e-mails and determined, on the basis of the following characteristics, that virtually all of the Alabama spam originated from a common source (*i.e.*, a single spammer or spam ring):

* the e-mails were sent via a dial-up Internet connection utilizing POPs (*i.e.*, the computer equipment of an ISP that an Internet user reaches when his modem "dials in" to the Internet) in or around Birmingham, Alabama;

* the EarthLink accounts used to send the e-mails were "purchased" by the spammer using credit cards which started with the same nine numbers (514503000) and which had expiration dates of either 04/04 or 07/04;

<center>22</center>

* the calls into the Birmingham POPs originated from a handful of Birmingham telephone numbers such as: (205) 314-0005, (205) 313-0435, (205) 313-0436, (205) 313-0444;

* the person used redundant EarthLink account identifiers when logging into the POPs;

* the content of the e-mails sent were a mixture of pornography, prescription drugs, herbal sex supplements and debt consolidation services; and

* the computers that were used to send the spam ran a sophisticated script which would cycle through many EarthLink accounts until it was able to connect.

44.

As EarthLink's investigation commenced, on the basis of the geographic connections between the spam and the Birmingham, Alabama area, EarthLink dubbed the person or persons responsible as the "Alabama Spammers."

45.

Over the course of the next several months, "Alabama Spammer"-related complaints to EarthLink increased at an alarming rate. The complaints came from, among others:

* individual Internet-users angered at having received the spam;

* individual Internet-users angered that the Alabama Spammer had used their respective addresses in his forged "from" line;

* other ISPs and system administrators who threatened to block incoming e-mail from EarthLink and/or its Alabama POPs.

### 46.

The complaining parties typically contended that EarthLink had somehow participated in or condoned the Alabama Spammer's bad acts or had failed to take reasonable steps to prevent these acts. As the complaints escalated, so, too, did EarthLink's investigation and defensive efforts.

### 47.

Using ANI (a more sophisticated and powerful version of Caller ID), EarthLink was able from time to time to determine certain phone numbers from which the Alabama Spammer had "dialed in" to EarthLink's POP (i.e., the phone number from which the Alabama Spammers connected to the Internet). The telephone numbers captured by the Alabama POPs ANI and Caller ID systems

included: (205) 314-0005, (205) 313-0435, (205) 313-0436, and
(205) 313-0444.

<div align="center">48.</div>

During this time period, among other defensive and
prophylactic actions, EarthLink implemented the following
measures:

* Members of the Fraud and Abuse team monitored access
  through the Birmingham POPs for users logging in using
  redundant EarthLink account identifiers;

* RADIUS logs (which show attempts to log in to the
  EarthLink system) for the Birmingham area were monitored
  for new accounts billed to credit cards with the same
  first nine digits as all of the Alabama Spammer
  accounts; and

* all numbers identified via Caller ID and/or POP ANI as
  being associated with the Alabama Spammers were blocked
  from connecting to the EarthLink network through any POP
  with ANI or Caller ID capability.

<div align="center">49.</div>

Even after the Alabama Spammers discovered that they had
become targets in EarthLink's anti-spam efforts, they continued
to subject Internet users to their illegal and unwanted

advertising.  The Netbenders Defendants simply moved their
equipment to a new physical location and continued to send spam.
The other Alabama Spammer Defendants, including the Financing
Members, continue to pay others to illegally advertise their
products via e-mail.

<div align="center">50.</div>

The Alabama Spammers spam continued long after EarthLink's
counsel discovered the location of the Spam Network equipment in
Birmingham and warned the Netbenders Defendants to stop using
EarthLink systems in any capacity.  During the course of the
Alabama Spammers' eight-month campaign, EarthLink received many
complaints regarding the Alabama Spammers and has accumulated an
extensive library of representative Alabama Spammers spam.
Samplings of various types of the spam sent by the Alabama
Spammers are already part of the record, having been attached to
previous filings by EarthLink and are hereby incorporated by
reference.

<div align="center">***EarthLink's Damages***</div>

<div align="center">51.</div>

EarthLink's phone lines, servers, and computers have been
bombarded with a multitude of complaint calls and e-mails from
Internet users and other Internet-related companies and ISPs
around the world who complained of the Defendants' illegal acts

and/or who thought that EarthLink somehow participated in or condoned those bad acts, or failed to take reasonable steps to prevent these acts.

## 52.

EarthLink has been forced to devote substantial time and resources to the problems caused by Defendants' illegal acts. These wrongful acts have accordingly resulted in substantial money damages for EarthLink, including loss of reputation and lost profits.

## 53.

Defendants were aware at all times of the illegal nature and consequences of their credit card and password fraud and theft and of their spamming and spoofing operations. Furthermore, Defendants knew that the quantity of complaints and returned mail resulting from their illegal schemes would damage the reputation of EarthLink and the performance of EarthLink's Georgia computer systems.

## 54.

Defendants likewise knew that their use of EarthLink's name and computers was not authorized. Finally, Defendants knew that they were prohibited from spamming EarthLink accounts with their illegal e-mails.

55.

Defendants have at all relevant times been aware of the damage to all legitimate and ethical Internet users and Internet-related companies, including EarthLink, caused by their illegal acts.

## JURISDICTIONAL ALLEGATIONS

### *Plaintiff EarthLink, Inc.*

56.

Plaintiff EarthLink is a Delaware Corporation with its principal place of business at 1375 Peachtree Street N.E., Atlanta, Fulton County, Georgia 30309. EarthLink is one of the largest ISPs in the world, providing Internet-related services to over 5 million customers.

57.

EarthLink's headquarters and principal place of business – including its executive department, its key legal personnel, call center representatives, the head and key members of its fraud and abuse team, and its "Network Operations Center" ("NOC") – are located in Atlanta, Georgia. EarthLink's Georgia NOC houses the essential portion of the EarthLink network of computers and equipment necessary for the provision of e-mail and Internet service to its customers and users.

58.

Indeed, with the exception of a few computers in California, EarthLink's Georgia NOC houses almost all of the computers, servers, and equipment that comprise EarthLink's network.

59.

Each and every above-described log-in request by the Netbenders Defendants necessarily involved access to EarthLink's Georgia NOC.

60.

As is described in detail below, Defendants, whose names and identities were not initially known, committed illegal acts that were intended to and did cause harm to EarthLink in the State of Georgia. The Defendants maintained systematic and continuous contacts with Georgia via the below-described e-mail and Internet-related crimes and schemes, including but not limited to their use of EarthLink's Georgia servers to send their e-mails and their use of stolen EarthLink accounts to send their e-mails.

61.

Defendants committed illegal acts that were intended to and did cause harm to EarthLink in the State of Georgia. Defendants are subject to jurisdiction pursuant to, among other sources, the Georgia Long-Arm Statute (O.C.G.A. § 9-10-91), the

principles set forth in Calder v. Jones, 465 U.S. 783, 104 S.

Ct. 1482, 79 L. Ed. 2d 804 (1984), and the forum selection

clause in EarthLink's ISA, which is applicable to anyone,

whether or not an EarthLink Member, who uses or accesses

EarthLink's Internet-related systems and services.

<div align="center">62.</div>

All of the Alabama Spammers' violations – and especially

those committed directly by the Netbenders Defendants - involved

the intentional trespass upon and misuse of EarthLink's Georgia

computer network.  This, standing alone, is sufficient for the

Court's exercise of jurisdiction over each of the Netbenders

Defendants.  See Verizon Online Services v. Ralsky, 203 F. Supp.

2d 601, 609 (E.D. Va. 2002) (finding personal jurisdiction over

defendant spammers existed under virtually identical facts).

<div align="center">63.</div>

Moreover, given the sheer volume of the spam, a significant

portion of the offending e-mails necessarily targeted Georgia

Internet users and necessarily resulted in sales to Georgia

residents.

<div align="center">64.</div>

As the technical masterminds at the heart of the Alabama

Spammer operation, the Netbenders Defendants personally (albeit

fraudulently) contracted for and used dial-up Internet services provided by EarthLink.

65.

As described by Alabama Spammer insider Erb Avore, the computer systems used by the Netbenders Defendants required dial-up Internet access in order to disguise the true source of their illegal e-mails, and Netbenders Defendant Andy Pope (the "Director of Engineering" for Netbenders, LLC) personally acquired the EarthLink accounts for the other members of the spam gang to use with their own spam network computers.

66.

Accordingly each of the Netbenders Defendants is bound by the terms of EarthLink's ISA and EarthLink's AUP.

67.

During the eight-month course of their illegal spam campaign, the Netbenders Defendants contracted with EarthLink for at least one hundred separate user accounts.

68.

Each of those accounts could be activated only with the new subscriber's express agreement to EarthLink's ISA and AUP.

69.

In addition, EarthLink's publicly and conspicuously-posted AUP clearly states that it applies to all Internet users who make use of EarthLink's computer systems, regardless of whether

they are EarthLink subscribers or merely visitors to EarthLink's
network.

70.

Given the jurisdiction of this Court over the Netbenders
Defendants, the Court also has jurisdiction over all other
members of the criminal enterprise (i.e., the Financing Members)
pursuant to 18 U.S.C. § 1965(b).  See, e.g., Republic of Panama
v. BCCI Holdings, S.A., 119 F.3d 935 (11th Cir. 1997); Dooley v.
United Technologies, 786 F. Supp. 65 (D. D.C. 1992).

71.

Separate and apart from 18 U.S.C. § 1965(b), this Court
also has jurisdiction over any Financing Members on the basis of
its jurisdiction over their agents and co-conspirators (i.e.,
the Netbenders Defendants).  See Sculptchair, Inc. v. Century
Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). (if a court has
jurisdiction over an agent, it necessarily has jurisdiction over
the principal); Georgia Gulf Corp. v. Ward, 701 F. Supp. 1556,
1561 (N.D. Ga. 1987) (jurisdiction existed on the basis of the
non-forum defendant's participation in an out-of-state
conspiracy to defraud a Georgia resident); Rudo v. Stubbs, 221
Ga. App. 702, 704, 472 S.E.2d 515, 517 (1996) ("[w]hen the
purpose of a conspiracy is to commit an intentional tort against
a Georgian, all of the coconspirators are purposefully directing

their activities toward Georgia and should reasonably anticipate being haled into court here.").

<div align="center">72.</div>

This Court has subject matter jurisdiction.

<div align="center">73.</div>

Venue is proper in this judicial district.

<div align="center">**COUNT I**
**FEDERAL CIVIL RICO VIOLATIONS**</div>

<div align="center">74.</div>

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 73 above as if the same were set forth herein in full.

<div align="center">75.</div>

18 U.S.C. § 1964 creates a private cause of action for persons and entities injured by violations of 18 U.S.C. § 1962 (the federal Racketeer Influenced & Corrupt Organizations Act).

<div align="center">76.</div>

Defendants' theft, e-mail schemes, mail fraud, and wire fraud detailed above constitute "racketeering activity" as that term is defined in 18 U.S.C. § 1961.

<div align="center">77.</div>

Defendants' theft, scams, and schemes detailed above constitute a pattern of racketeering activity, as required by 18 U.S.C. § 1961.

78.

In violation of 18 U.S.C. § 1962(a), Defendants have, through the pattern of racketeering activity described above and through the income derived therefrom, used and/or invested such income and its proceeds to acquire, establish and operate an enterprise engaged in and affecting interstate and foreign commerce.

79.

In violation of 18 U.S.C. § 1962(b), Defendants have, through the pattern of racketeering activity described above and through the proceeds derived therefrom, acquired and/or maintained, directly or indirectly, an interest in and/or control of an enterprise engaged in and affecting interstate and foreign commerce.

80.

In violation of 18 U.S.C. § 1962(c), Defendants have, through a pattern of racketeering activity, conducted and participated in, directly or indirectly, an enterprise engaged in and affecting interstate and foreign commerce.

81.

In violation of 18 U.S.C. § 1962(d), Defendants have conspired and/or endeavored to violate the provisions of 18 U.S.C. §§ 1962 (a), (b) and (c).

82.

The Alabama Spammers committed the RICO predicate acts of wire fraud, 18 U.S.C. § 1343, and bank fraud, 18 U.S.C. § 1344, in the following manner:

(a)

The Netbenders Defendants, acting both as individuals and business entities, knowingly obtained the social security numbers and other personally identifying information of numerous third parties;

(b)

The Netbenders Defendants obtained this information without the permission or knowledge of those third parties;

(c)

The Netbenders Defendants then knowingly, intentionally, and fraudulently used this information to impersonate those third parties in order to apply for and obtain credit cards from one or more financial institutions;

(d)

The credit cards obtained by The Netbenders Defendants were gift cards that only had a nominal amount of money placed on them;

(e)

The Netbenders Defendants then knowingly used the fraudulently obtained credit cards and the corresponding false identities to sign up for and obtain EarthLink user accounts;

(f)

The Netbenders Defendants used the interstate telephone system when signing up for the above-described EarthLink accounts;

(g)

The Financing Members knew or should have known that the Netbenders Defendants were engaged in the above-described criminal acts;

(h)

All the Alabama Spammers Defendants received the benefit of the EarthLink accounts obtained via the above-described scheme of fraud;

(i)

The above-described scheme of identity theft and credit card fraud was expressly perpetrated by the Netbenders Defendants on behalf of the Alabama Spammers enterprise for the purpose of stealing Internet and e-mail related services from EarthLink, which the Netbenders Defendants then used to send illegal spam e-mails advertising, *inter alia*, the products and services of the Financing Members;

83.

More specific details of the criminal enterprise committed by the Alabama Spammers Defendants are not known by EarthLink at this time because such information is within the exclusive knowledge of the Alabama Spammers Defendants.

84.

Pursuant to 18 U.S.C. § 1964, Defendants are liable to EarthLink for three times EarthLink's actual damages, punitive damages, attorney fees, investigative costs, and all other costs associated with or necessitated by the present litigation.

85.

Pursuant to 18 U.S.C. § 1964, EarthLink is entitled to a preliminary injunction and a permanent injunction directing Defendants to cease and desist from the above-described conduct.

**COUNT II**
**VIOLATION OF THE ELECTRONIC**
**COMMUNICATIONS PRIVACY ACT**

86.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 85 above as if the same were set forth herein in full.

87.

Defendants have and are engaged in acts constituting a violation of Chapter 121 - the Electronic Communications Privacy Act, 18 U.S.C. § 2701 et seq.

88.

EarthLink owns a computer network through which electronic communication services are provided to its customers.

89.

Defendants, through means of one or more computers used in interstate commerce, intentionally obtained access to EarthLink's facilities by causing excessive amounts of unsolicited electronic communications to be transmitted into or through EarthLink's systems. Defendants' access to EarthLink's systems occurred without EarthLink's authorization and beyond the bounds of any authorization Defendants might reasonably claim. Defendants' acts complained of herein were done knowingly and with the specific intent of assisting in Defendants' scheme to distribute promotional material and advertisements via e-mail for profit, on an unsolicited, illegal, and improper basis.

90.

Defendants' violations of the Electronic Communications Privacy Act have caused and/or contributed to damage and/or diminution of speed and utility to the computers, computer systems, networks, information, data and programs that comprise EarthLink's network. This damage and diminution of performance prevents or diminishes the authorized access to and/or use of

EarthLink's systems by EarthLink's customers and personnel, thereby causing injury to EarthLink.

<div align="center">91.</div>

Defendants' violations of the Electronic Communications Privacy Act have caused and continue to cause EarthLink to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court.  Unless enjoined by this Court, Defendants will continue these acts of conversion, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">92.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard for EarthLink's rights.  This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

## COUNT III
## VIOLATION OF THE COMPUTER
## FRAUD AND ABUSE ACT

93.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 92 above as if the same were set forth herein in full.

94.

Defendants have and are engaged in acts constituting violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.

95.

EarthLink maintains one or more computers as defined in § 1030(e) of the Computer Fraud and Abuse Act through which e-mail transmissions are received, stored and/or disseminated.

96.

Defendants, without authorization, or at the very least exceeding any authorization which they might have reasonably claimed, knowingly and willfully caused, through the means of a computer used in interstate commerce, the transmission of programs, information, codes or commands to EarthLink's computer facilities, with the intent, or at the very least, with reckless disregard of a substantial and unjustified risk, that their transmissions would damage, or cause damage to, a computer, computer system, network, information, data or program

comprising a part of EarthLink's computer facilities.  This is especially true in relation to such use and access accomplished through stolen credit cards and stolen passwords/accounts.

97.

Defendants' willful transmission of one or more programs, information, codes or commands to EarthLink's computer facilities have in fact caused or contributed to damage to and/or diminished performance of the computer, computer systems, networks, information, data, and programs which comprise said facilities and furthermore have caused the withholding and denial of use of the computers, computer services, systems, networks, information, data, and programs of EarthLink's computer facilities, thereby causing injury to EarthLink.

98.

The foregoing acts and conduct of Defendants have caused, and if not enjoined will continue to cause, loss or damage to one or more other persons, including EarthLink, of a value aggregating $1,000 or more during the applicable one year period.

99.

As a result of Defendants' acts, EarthLink has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in

excess of the jurisdictional amount-in-controversy requirements of this Court.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">100.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights.  This is especially true given Defendants' knowledge of the damage caused by their illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

<div align="center">

**COUNT IV**
**UNFAIR COMPETITION THROUGH**
**FALSE DESIGNATION (LANHAM ACT)**

</div>

<div align="center">101.</div>

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 100 above as if the same were set forth herein in full.

<div align="center">102.</div>

Defendants have and are engaged in acts of unfair competition through the use of false designations of origin and false advertising in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

<div align="center">42</div>

103.

Defendants have used and are using the domain name and service mark "earthlink.net" in relation to their illegal e-mails. Accordingly, Defendants have made and are making false express and implied representations that their services and junk e-mails originate with, are associated with, and/or are endorsed or allowed by EarthLink in such a manner as to create a likelihood of confusion among the recipients and readers of those e-mails, thereby inducing the belief that, contrary to fact, Defendants' advertisements are rendered, sponsored, or otherwise approved by, or connected with EarthLink.

104.

Defendants' acts have irreparably damaged, impaired, and diluted EarthLink's goodwill and good name. This is especially true insofar as Defendants' acts induce those viewing or receiving Defendants' advertisements to conclude incorrectly on the basis of this misrepresentation that EarthLink was somehow connected with, condoned, or otherwise participated in or allowed the illegal e-mails and schemes.

105.

Defendants' use of EarthLink's "earthlink.net" domain name and service mark in connection with their illegal acts and e-mails constitutes use of a false designation of origin.

Defendants' representations that their services and advertisements originate with or are endorsed by EarthLink constitute a use of false descriptions or representations of fact, within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a). Further, Defendants' use of EarthLink's domain name/service mark "earthlink.net" constitutes unfair competition entitling EarthLink to the remedies afforded pursuant to Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

<div align="center">106.</div>

As a result of Defendants' acts, EarthLink has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial. Unless enjoined by this Court, Defendants will continue these acts, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">107.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by their illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

## COUNT V
## DILUTION OF FAMOUS MARK (LANHAM ACT)

### 108.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 above as if the same were set forth herein in full.

### 109.

Defendants have and are engaged in acts constituting service mark dilution in violation of Section 43(c) of the Trademark Act of 1946, 1115 U.S.C. § 25(c).

### 110.

Defendants have made commercial use of the name and mark "earthlink.net" with the willful intent to trade on EarthLink's reputation and to cause dilution of the famous mark/name "earthlink.net".

### 111.

Defendants' use of this name and mark began long after EarthLink's mark and name had become well-known and famous.

### 112.

Defendants' use of this name and mark causes dilution of its distinctive quality.

### 113.

Defendants' use of this name and mark lessens its capacity to identify and distinguish EarthLink's goods, services, and customers.

114.

Defendants' activities complained of herein constitute service mark dilution within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. §§ 1125(c).

115.

As a result of Defendants' acts, EarthLink has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts, thereby causing EarthLink further immediate and irreparable damage.

116.

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. EarthLink is entitled to punitive damages in an amount to be determined at trial.

## COUNT VI
## GEORGIA CIVIL RICO VIOLATIONS

### 117.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 116 above as if the same were set forth herein in full.

### 118.

O.C.G.A. § 16-14-6(c) creates a private cause of action for persons and entities injured by violations of O.C.G.A. 16-14-4 (Georgia's "RICO" or Racketeer Influenced & Corrupt Organizations Act).

### 119.

Defendants' fraudulent scams and schemes detailed above (and, in fact, each individual e-mail sent by Defendants) constitute "racketeering activity" as that term is defined in O.C.G.A. § 16-14-3(3).

### 120.

Defendants' e-mails and illegal Internet-related schemes constitute a pattern of racketeering activity, as required by O.C.G.A. § 16-14-3(2).

### 121.

In violation of O.C.G.A. § 16-14-4(a), Defendants have, through the pattern of racketeering activity described above and through the proceeds derived therefrom, acquired and/or

maintained, directly or indirectly, an interest in and/or
control of an enterprise, real property, and or personal
property (including but not limited to money).

<div align="center">122.</div>

In violation of O.C.G.A. § 16-14-4(b), Defendants have,
through a pattern of racketeering activity, conducted and
participated in, directly or indirectly, an enterprise.

<div align="center">123.</div>

In violation of O.C.G.A. § 16-14-4(c), Defendants have
conspired and/or endeavored to violate the provisions of § 16-
14-4(a) and (b).

<div align="center">124.</div>

Pursuant to O.C.G.A. § 16-14-6, Defendants are liable to
EarthLink for three times its actual damages, punitive damages,
attorney fees, investigative costs, and all other costs
associated with or necessitated by the present litigation.

<div align="center">125.</div>

Pursuant to O.C.G.A. § 16-14-6, EarthLink is entitled to a
preliminary injunction and a permanent injunction directing
Defendants to cease and desist from the above-described conduct.

## COUNT VII
## BREACH OF CONTRACT
## (TERMS OF SERVICE AND ACCEPTABLE USE POLICY)

### 126.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 125 above as if the same were set forth herein in full.

### 127.

The Netbenders Defendants executed and accepted the EarthLink ISA and AUP by signing up for EarthLink accounts and using those accounts to send e-mail.

### 128.

The Netbenders Defendants are sophisticated, professional e-mail marketers who had actual knowledge of EarthLink's ISA and AUP.

### 129.

The Netbenders Defendants intentionally breached EarthLink's ISA and AUP by, *inter alia*, using the accounts they obtained to send unsolicited commercial e-mail.

### 130.

In relation to any functioning EarthLink account or address used by a Defendant to send any of their illegal e-mails or otherwise aid in their illegal schemes, Defendants' use of such account/address was in express violation of the respective contracts between them and EarthLink.

131.

Specifically, in relation to any such account or address, Defendants were required to and did expressly ratify and accept EarthLink's ISA and AUP, which expressly prohibit any use of the EarthLink name or account in any manner in relation to spamming or spoofing. The use of stolen accounts or credit cards is also, of course, prohibited.

132.

In such case, Defendants' use of EarthLink's name, computer system, and resources, in addition to the causes of action set forth above and below, constitutes breach of contract.

133.

As a result of these wrongful acts of Defendants, EarthLink has suffered irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts of misappropriation, thereby causing EarthLink further immediate and irreparable damage.

## COUNT VIII
## VIOLATION OF THE GEORGIA
## COMPUTER SYSTEMS PROTECTION ACT
## (COMPUTER THEFT AND TRESPASS)

### 134.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 133 above as if the same were set forth herein in full.

### 135.

Defendants have and are engaged in acts constituting violation of the Georgia Computer Systems Protection Act, O.C.G.A. §§ 16-9-90 et seq.

### 136.

In committing the wrongful acts detailed above, including but not limited to Defendants' theft of EarthLink accounts and their theft of and trespass upon EarthLink's computer resources, Defendants have used the computers and/or computer networks of EarthLink with knowledge that such use was and is without authority and with the intention of taking EarthLink's property, obtaining that property by deceitful means or artful practice, and/or converting that property to Defendants' use in violation of Defendants' legal obligations.

### 137.

Defendants have accordingly committed "Computer Theft" as that term is defined at O.C.G.A. § 16-9-93(a).

138.

Furthermore, in committing the wrongful acts detailed above, including but not limited to Defendants' theft of EarthLink accounts and their theft of and trespass upon EarthLink's computer resources, Defendants have used the computers and/or computer networks of EarthLink with knowledge that such use was and is without authority and with the intention of interfering with EarthLink's and its members' use of EarthLink computer programs and data, and/or altering, damaging and/or causing the malfunction of EarthLink's network and computer system.

139.

Defendants have accordingly committed "Computer Trespass" as that term is defined at O.C.G.A. § 16-9-93(b).

140.

Defendants' violation of the Georgia Computer Systems Protection Act has caused and continues to cause EarthLink to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of any jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts of misappropriation, thereby causing EarthLink further immediate and irreparable damage.

141.

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by their illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

**COUNT IX**
**UNFAIR COMPETITION (STATE)**

142.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 141 above as if the same were set forth herein in full.

143.

Defendants have and are engaged in fraudulent acts or practices in violation of the prohibition against unfair competition found at O.C.G.A. § 23-2-55.

144.

Defendants have used and are using EarthLink's computer equipment and name in connection with the above-described e-mail schemes in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of the e-mail schemes and advertisements. The use of this name and domain designation by Defendants creates the unreasonable risk that

recipients and other readers of the e-mails described above may conclude that there exists some affiliation, connection or association between and among EarthLink, the e-mails, and the sender of the e-mails.

<center>145.</center>

Defendants' acts have damaged, impaired, and diluted that part of EarthLink's goodwill and good name symbolized by the above-discussed names and marks of EarthLink. The nature, probable tendency, and effect of Defendants' use of these names and properties in the manner alleged is to enable Defendants to deceive the public.

<center>146.</center>

Defendants' use of EarthLink's intellectual property – the above-identified domain designations and names – as alleged constitutes unfair competition as prohibited by O.C.G.A. § 23-2-5.

<center>147.</center>

Defendants had actual knowledge of EarthLink's rights at the time they decided to use EarthLink's mark and name(s) in connection with their theft-related and illegal-e-mail-related schemes. Thus, Defendants willfully and deliberately infringed EarthLink's rights.

148.

Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as EarthLink. These practices constitute unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising.

149.

As a result of Defendants' acts, EarthLink has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts, thereby causing EarthLink further immediate and irreparable damage.

150.

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by their illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

## COUNT X
## DECEPTIVE TRADE PRACTICES

### 151.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 150 above as if the same were set forth herein in full.

### 152.

Defendants have and are engaged in fraudulent acts or practices in violation of the prohibition against deceptive trade practices found at O.C.G.A. § 10-1-372 et seq.

### 153.

Defendants have used and are using EarthLink's intellectual property in connection with the above-described e-mail schemes in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of the e-mail schemes and advertisements.  The use of these names by Defendants creates the unreasonable risk that recipients and other readers of the e-mails described above may conclude that there exists some affiliation, connection or association between and among EarthLink, the e-mails, and the sender of the e-mails.

### 154.

Defendants' acts have damaged, impaired, and diluted that part of EarthLink's goodwill symbolized by EarthLink's names and marks.  The nature, probable tendency, and effect of Defendants'

use of these names/marks in the manner alleged is to enable
Defendants to deceive the public.

<center>155.</center>

Defendants' use of EarthLink's names and marks in the
manner alleged constitutes deceptive trade practices of a type
prohibited by O.C.G.A. § 10-1-372 et seq.

<center>156.</center>

Defendants had actual knowledge of EarthLink's rights at
the time they decided to use EarthLink's intellectual property
in connection with their theft-related and illegal-e-mail-
related schemes.  Thus, Defendants willfully and deliberately
infringed EarthLink's rights.

<center>157.</center>

Defendants' unfair business practices are of a recurring
nature and harmful to the consumers and the public at large, as
well as to EarthLink.  These practices constitute unlawful,
unfair, fraudulent, and deceptive business practices, and
unfair, deceptive, untrue, and misleading advertising.

<center>158.</center>

As a result of Defendants' acts, EarthLink has suffered and
continues to suffer and incur irreparable injury, loss of
reputation, and pecuniary damages to be proved at trial, in
excess of the jurisdictional amount-in-controversy requirements
of this Court.  Unless enjoined by this Court, Defendants will

continue these acts, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">159.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by their illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

<div align="center">

**COUNT XI**
**MISAPPROPRIATION OF COMPUTER RESOURCES**

</div>

<div align="center">160.</div>

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 159 above as if the same were set forth herein in full.

<div align="center">161.</div>

Defendants have and are engaged in acts of misappropriation in that Defendants, without authorization, have used EarthLink's proprietary e-mail system and proprietary computer resources in relation to the transmission of unsolicited and improper promotional and advertising material (including the direct spamming of EarthLink members). Moreover, Defendants gained fraudulent access to such system by means of stolen credit card numbers and account passwords.

<div align="center">58</div>

162.

Defendants' use of EarthLink's computer systems and resources, from which Defendants derived profits or income to the detriment of EarthLink and its customers, constitutes the unfair and unlawful misappropriation of valuable commercial property and resources owned by EarthLink.

163.

Defendants' unlawful and inequitable activities have damaged and diluted the commercial value of the services offered by EarthLink and have resulted in the misappropriation by Defendants of EarthLink's equipment, skill, expenditures, and labors.

164.

The activities of Defendants described herein constitute misappropriation of EarthLink's commercial property and services in violation of the common law of the State of Georgia.

165.

Defendants' misappropriation of EarthLink's commercial property and services has caused and continues to cause EarthLink to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these

acts of misappropriation, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">166.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by their illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

<div align="center">

**COUNT XII**
**CONVERSION**

</div>

<div align="center">167.</div>

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 166 above as if the same were set forth herein in full.

<div align="center">168.</div>

Defendants have and are engaged in acts of conversion in violation of the law of the State of Georgia.

<div align="center">169.</div>

The computers, computer networks, and computer services that comprise EarthLink's e-mail systems are the personal property of EarthLink. Defendants, without authorization, have intentionally used EarthLink's e-mail systems for Defendants' own commercial benefit. This unauthorized use by Defendants has

deprived EarthLink and its customers of the legitimate use of these proprietary and commercially valuable systems.

<div align="center">170.</div>

Defendants' conversion of EarthLink's commercial property has caused and continues to cause EarthLink to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts of conversion, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">171.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

## COUNT XIII
## TRESPASS

### 172.

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 171 above as if the same were set forth herein in full.

### 173.

The Netbenders Defendants trespassed on EarthLink's e-mail servers and related computers, i.e., EarthLink's personal property, by accessing those computers without EarthLink's permission or authorization or, in the alternative, knowingly exceeding any actual authority granted to them by the ISA or AUP.

### 174.

Specifically, the Netbenders Defendants used fraudulently obtained EarthLink accounts to send unsolicited commercial e-mail in violation of EarthLink's AUP and ISA, which specifies the extent to which EarthLink permits its members and/or third parties to access and use its computers.

### 175.

Defendants have and are engaged in acts of trespass to property in violation of the law of the State of Georgia.

176.

The computers, computer networks, and computer services that comprise EarthLink's e-mail system are the personal property of EarthLink. Defendants, without authorization, have intentionally used EarthLink's e-mail systems and computer resources for their own commercial benefit. This unauthorized use by Defendants has deprived EarthLink and its customers of the legitimate use of this proprietary and commercially valuable system.

177.

Defendants' trespass upon EarthLink's commercial property has caused and continues to cause EarthLink to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts of trespass, thereby causing EarthLink further immediate and irreparable damage.

178.

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights. This is especially true given Defendants' knowledge of the damage caused

by their illegal conduct.  Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

<div align="center">

**COUNT XIV**
**UNJUST ENRICHMENT**

</div>

<div align="center">

179.

</div>

EarthLink realleges and incorporates by reference the allegations contained in paragraphs 1 through 178 above as if the same were set forth herein in full.

<div align="center">

180.

</div>

Defendants have and are engaged in acts of unjust enrichment entitling EarthLink to quasi-contract relief under the law of the State of Georgia.

<div align="center">

181.

</div>

Defendants have derived economic benefit from the dissemination of unsolicited commercial messages through the unauthorized use of EarthLink's proprietary computer resources, equipment, and intellectual property.

<div align="center">

182.

</div>

Defendants have paid no compensation to EarthLink for the dissemination of Defendants' unsolicited messages and advertisements using EarthLink's names, marks, and resources, or for the hundreds of stolen EarthLink accounts used by Defendants.

<div align="center">183.</div>

As a result of their conduct, Defendants have been unjustly enriched.

<div align="center">184.</div>

As a result of Defendants' acts, EarthLink has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing EarthLink further immediate and irreparable damage.

<div align="center">185.</div>

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of EarthLink's rights.  This is especially true given Defendants' knowledge of the damage caused by their illegal conduct.  Accordingly, EarthLink is entitled to punitive damages in an amount to be determined at trial.

<div align="center">**PRAYER FOR RELIEF**</div>

<div align="center">186.</div>

WHEREFORE, Plaintiff EarthLink prays for judgment against Defendants, and each of them, jointly and severally, that includes:

(a) A preliminary and permanent injunction enjoining
    Defendants and any affiliated persons or entities from:
    (1) directly or indirectly sending or transmitting **any
    unsolicited commercial e-mails to any Internet user**,
    including but not limited to any such messages that
    references or uses in any way EarthLink or any of its
    property, computers, domains, or users; and (2) engaging
    in any further illegal activities in relation to the
    theft and/or misuse of third-party credit card numbers,
    passwords, or e-mails accounts;

(b) Special and general damages in an amount to be proven at
    trial;

(c) The trebling of its damages pursuant to statutory law
    cited herein;

(d) Punitive and exemplary damages in an amount to be proven
    at trial;

(e) Reasonable attorney fees herein;

(f) Costs of suit incurred herein; and

(g) Such other and further relief as this Court may deem
    just and proper.

Respectfully submitted this 22nd day of September, 2005.

**WELLBORN & WALLACE, LLC**

/s/ Kelly O. Wallace
_____
Paul F. Wellborn, III
Georgia Bar No. 746720
Kelly O. Wallace
Georgia Bar No. 734166
Jamie P. Woodard
Georgia Bar No. 775792

1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309

Phone:    (404) 815-9595
Fax:      (404) 815-9957
E-mail:   pete@wellbornlaw.com
          kelly@wellbornlaw.com
          jamie@wellbornlaw.com

                    Attorneys for EarthLink, Inc.

## **VERIFICATION**

Under penalty of perjury, I represent and aver on this 22nd day of September, 2005, that the facts set forth in the preceding Second Amended Verified Complaint as to Plaintiff EarthLink, Inc. are true and correct to the best of my belief and knowledge, and hereby verify that complaint.

Mary Youngblood
Abuse Team Manager
EarthLink, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EARTHLINK, INC. | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1 03 CV 2559 JOF |
| | ) | |
| ANDY POPE; SCOTT MASLOWE; | ) | |
| FRED LUSKY; NETBENDERS, LLC; | ) | |
| ISN, LLC; and JOHN DOES 17-50 | ) | |
| (THE "ALABAMA SPAMMERS"); | ) | |
| | ) | |
|     Defendants. | ) | |

## RULE 7.1 CERTIFICATE OF
## COMPLIANCE WITH LOCAL RULE 5.1

This is to certify that the foregoing Second Amended Complaint was prepared using 12 point Courier New and accordingly complies with Local Rule 5.1.  This certificate is given in compliance with Local Rule 7.1(D).

This 22nd day of September, 2005.

**WELLBORN & WALLACE, LLC**

/s/ Kelly O. Wallace_____
Kelly O. Wallace
Georgia Bar No. 734166
Attorney for EarthLink, Inc.

1372 Peachtree Street, N.E. Suite 204
Atlanta, GA 30309
Ph:    (404) 815-9595
Fx:    (404) 815-9957
e-mail:  kelly@wellbornlaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EARTHLINK, INC.                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       ) CASE NO. 1 03 CV 2559 JOF
                                         )
ANDY POPE; SCOTT MASLOWE;                )
FRED LUSKY; NETBENDERS, LLC;             )
ISN, LLC; and JOHN DOES 17-50            )
(THE "ALABAMA SPAMMERS");                )
                                         )
        Defendants.                      )

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2005, I

electronically filed the foregoing Second Amended Complaint with

the Clerk of Court using the CM/ECF system which will

automatically send e-mail notification of such filing to the

following attorneys of record:

    Walter Piszczatowski              Kelly Amanda Lee
    Hertz, Schram & Saretsky          Womble Carlyle Sandridge & Rice
    1760 South Telegraph,             1201 West Peachtree Street, N.E.
    Suite 300                         One Atlantic Center, Suite 3500
    Bloomfield Hills, MI 48302        Atlanta, GA 30309


I hereby certify that I have mailed by United States Postal

Service the document to the following non-CM/ECF participants:

    Andy Pope
    25 Bob Witt Rd.
    Medina, TN 38355

**WELLBORN & WALLACE, LLC**

/s/ Kelly O. Wallace_____
Kelly O. Wallace
Georgia Bar No. 734166
Attorney for EarthLink, Inc.

1372 Peachtree Street, N.E. Suite 204
Atlanta, GA 30309
Ph:      (404) 815-9595
Fx:      (404) 815-9957
e-mail:  kelly@wellbornlaw.com